UNITED STATES of America, Plaintiff,

v.

122.63 ACRES OF LAND, More or Less, SITUATED IN the TOWN OF MILLIS, MEDFIELD, AND NORFOLK, COUNTY OF NORFOLK, COMMONWEALTH OF MASSACHUSETTS, John H. Alexander, et al, Defendants.

Civ. A. No. 80–409–C.

United States District Court, D. Massachusetts.

Nov. 17, 1981.

Kenneth P. Nasif, Joseph J. McGovern, III, Asst. U. S. Attys., Boston, Mass., for the U.S.

**540**

Francis G. McGee, Natick, Mass., for Tract # 111E—defendants Norman Hall, Catherine Hall & John H. Alexander, Jr.

Michael J. McGlone, Dept. of Revenue, Legal Bureau, Com. of Mass., Boston, Mass., for Tracts Nos. 426E, 900E, 612, 110 and 1100–2—defendant Commissioner of Revenue.

Robert B. Russell, Dedham, Mass., for Tract Nos. 614 and 614E—defendant Margaret Allen.

Stephen Gordet, Westwood, Mass., for Tract No. 426E.

Harvey Weiner, Peabody & Arnold, Boston, Mass., for Tract No. 900E—defendant Town of Millis.

Wayne B. Hollingsworth, Belmont, Mass., Elliott M. Sherman, Braintree, Mass., for Tract No. 522.

James J. Moran, Jr., & John T. Williams, Hausserman, Davison & Shattuck, Boston, Mass., for Tract No. 900E—Ferdinand Albert, Stephen Albert & Joseph Kanter; Trustees of Nat. Ind. Realty Trust.

William & Helen Burns, pro se.

Byron Bristol & Esther Bristol, pro se.

Howard Palmer, Asst. Atty. Gen., Boston, Mass., for defendant Commissioner of Revenue.

Sandra A. Ciullo, Dept. of Revenue, Legal Bureau,. Com. of Mass., Boston, Mass., for Tract Nos. 522, 612.

Elaine Taylor, Medfield, Mass., for Tract No. 612.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a complaint in condemnation filed on March 4, 1980 by the United States for the purpose of improving the flood control of the Charles River area. Defendants are the landowners John and Mary Alexander. In its complaint, the United States cited several acts of Congress which authorize the partial or complete taking of more than 120 acres of land in the Charles River area in Massachusetts. The government seeks an order condemning this land, and awarding all defendant landowners the amounts estimated by the government to be the value of the interests taken.

In this case, John and Mary Alexander contest the government's estimation of $100 as adequate compensation for the taking of an easement over about eight-tenths of an acre of undeveloped pastureland on their six-acre residential property in Millis, Massachusetts. The case was tried without jury on September 16, 1981.

After trial, I find and rule as follows:

The Alexanders do not dispute the government's legal right to take the property in question. The sole dispute concerns the amount of the award which is to be paid to them to fairly compensate for the taking of the easement.

The terms of this easement are spelled out in the government's complaint and amended complaint. The easement covers approximately .85 acres of undeveloped pasture in one corner of the defendants' six-acre residential lot. It grants the government, *inter alia*, the right to maintain the area in its natural state, to prevent any alteration of the drainage characteristics of the land, and to maintain and control the natural flooding which may seasonally occur from the waters of the nearby Charles River. The easement forbids outright the construction of any structure for the purpose of human habitation and restricts the construction of any other structure, save fencing, without the permission of the government. Finally, the easement gives the government the right to post signs indicating the nature and extent of the government's control for flood management purposes. The government has not as yet posted such signs on the defendants' property.

The improvements on this six-acre property include a seven-bedroom house, a smaller residential structure, a four-car garage, riding stables, a swimming pool, and a tennis court. None of these items is on the area which would be directly affected by the easement, which is over a far corner at the rear of the estate which is only used as pastureland.

■ It is axiomatic that the proper measure of damages in a condemnation case is the diminution in the value of the remaining property caused by the taking, based on the highest and best use of the property as a whole at the time of the taking. The parties to this dispute agree that the highest and best use of the Alexander's property at the time of the taking was the use of the six-acre parcel as a single residential unit. The government's expert land appraiser, Donald Reenstierna, testified, and I find, that while development of the six-acre lot into four residential lots would be the highest and best use of the property, the extensive improvement of the property, plus the existence of zoning and deed restrictions renders such development economically unfeasible. Mr. Reenstierna concluded that the highest and best use of the land at the time of the taking was its continued use as a one-family estate. The landowners did not present any evidence which contradicted this opinion, and have in fact used the property in this manner to date since purchasing it in 1966. I therefore find that at the time of the taking the highest and best use of the defendants' lot was its use as a one-family residence.

The second determination which this Court must make is the extent of the diminution in the value of the remainder of the defendants' property as a result of the taking.

Mr. Alexander—the defendants' only witness—testified that in his estimation the entire lot was worth between $400,000 to $450,000 prior to the taking of the easement. Although the Alexanders have not received any offer to buy this lot, Mr. Alexander testified that he had a valid basis on which to make this valuation because he has kept himself aware of the sale prices of comparable properties through his membership in a residential property-owner's club. In Mr. Alexander's opinion the existence of the easement will significantly reduce his bargaining power with respect to prospective purchasers of the property should he and his wife decide to sell the remaining property. Mr. Alexander believes that such a hypothetical buyer would reduce his or her bid $20,000 to $25,000 after discovering the extent of the restrictions imposed by the easement. The defendant thus requests that damages of between $20,000 to $25,000 be awarded.

The government maintains that its estimated compensation of $100 is adequate because restrictions already in the deed to the Alexanders' residential parcel lot and certain Town of Millis zoning regulations which were already in effect at the time of the taking restricted the Alexanders' ability to develop the land directly affected by the easement to the same extent as the easement.

Evidence of these prior restrictions was introduced by the government during the testimony of its expert witness, Mr. Reenstierna. Mr. Reenstierna testified that during the course of his investigation, he discovered in the Alexanders' deed to the property in question a covenant in which the Alexanders' promised for themselves and their heirs and assignees not to construct on the premises any building for the purpose of human occupancy without the permission of the grantors of the deed, who retained property on three sides of the Alexanders. The grantors promised in the same deed not to construct any such building on the remaining property without the permission of the Alexanders. A copy of these covenants was introduced into evidence by the government. Under cross-examination, Mr. Reenstierna said that he believed that the purpose of these joint covenants was to protect the interests of both parties by creating a situation in which no part of the sparsely populated surrounding area could be developed without abutting owners' consent.

Mr. Reenstierna also testified about old Section XI of the Town of Millis zoning laws, which was in effect at the time of the taking. This section restricted the construction or alteration of any structure, the filling or excavation of any "earth material," or the creation or alteration of any ponds or water-courses in a certain area (designated as a floodplain district) which

included almost all of the defendants' land directly affected by the easement, unless a permit was secured from the town's Granting Authority for such activity. This section, a copy of which was introduced into evidence by the government, provided that exempting permits could be granted only after a public hearing on the matter had been conducted, and after the Granting Authority was able to assure that the activity in question would be executed in compliance with the very exacting and technical specifications of Section XI.

On the basis of his investigations, Mr. Reenstierna concluded that due to the existence of the restrictive covenant in the Alexander's deed and the Section XI of the Millis zoning laws at the time of the taking, the value of the .85 acre of land subject to the easement had not been appreciably diminished as a result of the taking, and that the defendants had suffered no measurable loss. He noted that given the deed and zoning law restrictions, the best use of the .85 acre tract prior to the taking of the easement, in conjunction with the use of the entire tract as a single residential lot, was use as pastureland; it is Mr. Reenstierna's opinion that the easement in no way restricts the continued use of the defendants' land as such. He thus recommended that damages of $100 be awarded to compensate the defendants for any "imposition" suffered as a result of the taking.

■ I find Mr. Reenstierna's testimony to be persuasive and that the easement in question does not increase in any substantial way the restrictions which already existed on the defendants' property at the time of the taking. I find that the taking has a *de minimus* effect at most on the Alexanders' use of this pastureland and that fair compensation for the taking is in the amount of $500.00.

Order accordingly.